UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

ROSEANN PAYNE,

                              Plaintiff,                14 CV 7098 (ALC)
            -against-

IMANI KIRKLAND,

                              Defendant.
-------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF FEES AND COSTS**

**BRETT H. KLEIN, ESQ., PLLC**
Attorneys for Plaintiff Roseann Payne
305 Broadway, Suite 600
New York, New York 10007
(212) 335-0132

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ......................................................................................................... 1

FACTS ......................................................................................................................... 1

ARGUMENT ............................................................................................................. 10

   I.    PLAINTIFF IS THE PREVAILING PARTY AND IS ENTITLED TO A
COMPLETE AWARD OF HER ATTORNEYS' FEES AND COSTS.................................. 10

      A.  Legal Standard for Awarding Fees ................................................................ 10

      B.  Plaintiff's Counsel's Rates Correspond to the Prevailing Market Rate and
Constitute KCR's Customary Billing Rates ......................................................... 13

   II.   THE HOURS EXPENDED LITIGATING MS. PAYNE'S CASE ARE
REASONABLE ........................................................................................................... 19

   III.  APPLYING THE JOHNSON FACTORS, THE FEES REQUESTED ARE
REASONABLE ........................................................................................................... 22

   IV.  PLAINTIFF IS ENTITLED TO REIMBURSEMENT OF HIS COSTS ........................ 25

CONCLUSION............................................................................................................ 26

## CASES

*Abdell v. City of N.Y.*, 05 CV 8453 (RJS), 2015 WL 898974 (S.D.N.Y. Oct. 23, 2013) .................................................15, 16

*Adorno v. Port Auth. of New York & New Jersey*, 685 F. Supp. 2d 507, 513-14 (S.D.N.Y. 2010)................................. 15

*Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415 (1975)....................................................................................................... 10

*Algie v. RCA Global Commc'ns, Inc.*, 891 F.Supp. 875, 894 (S.D.N.Y.1994)....................................................................... 22

*Anderson v. City of New York*, 132 F. Supp. 2d 239, 245 (S.D.N.Y. 2001)........................................................................... 25

*Andrews v. Koch*, 554 F. Supp. 1099, 1101 (E.D.N.Y. 1983) ................................................................................................... 14

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany County Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008) ............................................................................................................................................................ 23

*Barbour v. City of White Plains*, 788 F. Supp. 2d 216, 225-26 (S.D.N.Y. 2011)......................................................1, 15, 16

*Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008)..................................................................... 12

*Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 289-90 (2d Cir. 2011) ........................................................................................................................................................................................................11

*City of Burlington v. Dague*, 505 U.S. 557 (1992) ..................................................................................................................... 24

*Coakley v. Webb*, No. 14 CIV. 8438 (ER), 2016 WL 1047079 (S.D.N.Y. Mar. 10, 2016)................................................ 15

*Creighton v. Dominican Coll.*, C09-3983Z, 2011 WL 4914724, at *6 (S.D.N.Y. Aug. 16, 2011).................................... 15

*Crescent Publishing Group, Inc. v. Playboy Enterprises*, 246 F.3d 142, 151 (2d Cir. 2001) ........................................ 14

*DeCurtis v. Upward Bound Int'l, Inc.*, No. 09 Civ. 5378(RJS), 2011 WL 4549412 (S.D.N.Y. Sept. 27, 2011)........... 15

*Farbotko v. Clinton County of New York*, 433 F.3d 204, 209 (2d Cir. 2005)................................................................13, 17

*Farrar v. Hobby*, 506 U.S. 103, 114 (1992).................................................................................................................................. 12

*Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011) .................................................................................................................................... 12

*Gagne v. Maker*, 594 F.2d 336, 344 (2d Cir.1979).................................................................................................................... 12

*Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 114 (2d Cir. 1988) ................................................... 14

*Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)..................................................................................................................... 19

*Green v. Torres*, No. 98 Civ. 8700, 2002 WL 922174, at *1 (S.D.N.Y. May 7, 2002)....................................................... 16

*Hensley v. Eckerhart*, 461 U.S. 424, 445 (1983) ....................................................................................................................... 10

*Himmel v. Country in New York, LLC*, No. 09 Civ. 5073 (LMM) (DF), 2011 WL 31045, at *3 (S.D.N.Y. Jan. 4, 2011)....................................................................................................................................................................................................... 12

*Hnot v. Willis Group Holdings Ltd.*, 01 Civ. 6558 (GEL), 2008 WL 1166309, at *5 (S.D.N.Y. Apr. 7, 2008) ........... 22

*In re Palermo*, No. 08 CV 7421(RPP), 2011 WL 3874866, at *20 (S.D.N.Y. Sept. 2, 2011) .......................................... 15

*Insinga v. Cooperatieve Centrale Raiffeisen Boerenleenbank B.A.*, 478 F. Supp. 2d 508, 513 (S.D.N.Y. 2007).........1

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974)........................................................................... 23

*Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005)......................................................................................... 11

*McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 672 N.Y.S.2d 230, 233-34 (N.Y. Sup. Ct. 1997) .........................1

*Meriwether v. Coughlin*, 727 F. Supp. 823, 831 (S.D.N.Y. 1989)........................................................................................... 14

*Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)..................................................................................... 11, 12, 22

*Millea*, 658 F.3d at 167 ...................................................................................................................................................................... 12

*Morris v. Eversley*, 343 F. Supp. 2d 234, 245 (S.D.N.Y. 2004) .............................................................................................. 25

*Mugavero v. Arms Acres, Inc.*, No. 03 Civ. 05724 (PGG), 2010 WL 451045, at *4 (S.D.N.Y. Feb. 9, 2010)13, 21, 22

*New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)................................21, 22

*Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1672-73 (2010)....................................................................................... 11

*Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1672-73 (2010)....................................................................................... 22

*Quaratino v. Tiffany & Co.*, 166 F.3d 422 (2d Cir. 1999)............................................................................................................1

*Raniola v. Bratton*, No. 96 Civ. 4482, 2003 WL 1907865, at *6................................................................................16, 21, 22

*Reid v. New York*, 584 F. Supp. 461, 462 (S.D.N.Y. 1984) ....................................................................................................... 14

*Reiter v. MTA New York City Transit Auth.*, 457 F.3d 224, 243 (2d Cir. 2006) ............................................................... 13

*Roberson v. Giuliani*, 346 F.3d 75, 78 (2d Cir. 2003)................................................................................................................ 10

*Robinson v. City of New York*, No. 05 Civ. 9545 (GEL), 2009 WL 3109846, at *4 (S.D.N.Y. Sept. 29, 2009)....13, 15

*Rosado v. City of New* York, No. 11 Civ. 4285(SAS), 2012 WL 955510 at *6 (S.D.N.Y. Mar. 15, 2012) .......................1

*Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008)......................................................................... 16, 20, 25

*Scott v. City of New York*, 643 F.3d 56, 59–60 (2d Cir. 2011) ................................................................................................ 15

*Short v. Manhattan Apartments, Inc.*, 286 F.R.D. 248, 256 (S.D.N.Y. 2012) ...........................................................19, 22

*Skold v. American Int'l Group, Inc.*, No. 96 Civ. 7137, 1999 WL 405539, at *7 (S.D.N.Y. June 18, 1999................. 16

*Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316(PAC), 2012 WL 3878144, at *2 (S.D.N.Y. Aug. 6, 2012) 13, 15

*Tucker v. City of New York*, 704 F. Supp. 2d 347, 358 (S.D.N.Y. 2010) ................................................................. 1, 12

*Vilkhu v. City of New York*, No. 06 Civ. 2095 (CPS), 2009 WL 1851019, at *5 (E.D.N.Y. June 26, 2009) .......... 14, 16

*Wise v. Kelly*, 620 F. Supp. 2d 435 (S.D.N.Y. 2008) ................................................................................................ 20

## STATUTES

42 U.S.C. § 1988 ...................................................................................................................................................... 10

## OTHER AUTHORITIES

Karen Sloan, *Billing Blues*, The National Law Journal (Dec. 6, 2010) .................................................................. 19

*Nationwide Sample of Law Firm Billing Rates*, The National Law Journal (Dec. 17, 2012), *available at* http://www.law.com/jsp/nlj/PubArticleNLJ.jsp?germane=1202581351631&id=1202581266427&interactive=true ................................................................................................................................................................ 19

Plaintiff Roseann Payne submits this memorandum of law in support of her request for attorneys' fees and costs.

## INTRODUCTION

On March 3, 2017, this Court entered a Judgment against defendant Imani Kirkland and in favor of plaintiff Roseann Payne.  The judgment was based on a jury verdict in plaintiff's favor on her Section 1983 claim for excessive force that was rendered on December 17, 2017 after a 4-day jury trial.  Pursuant to the Judgment, plaintiff now seeks reasonable attorneys' fees at a rate of $575 per hour for partner Brett Klein, $350 per hour for ninth-year associate Lissa Green-Stark, as well as reasonable costs expended during the course of litigating this case.  After a careful review of the firm's time entries, including eliminating charges for individuals who spent only a minimal number of hours on the case and removing time that could be considered unnecessarily duplicative or excessive, plaintiff now seeks $151,713.00 in fees and $10,487.79 in costs, plus the reasonable fees that counsel was forced to expend in continuing to litigate this fee motion.[1]

## FACTS

Plaintiff Roseann Payne is a woman in her fifties who has prevailed after a four-day jury trial an excessive force claim against defendant New York State Trooper Imani Kirkland arising

_____

[1] Reasonable fees are routinely awarded for work and time spent on litigating fee applications.  *See Quaratino v. Tiffany & Co.*, 166 F.3d 422, 427-28 (2d Cir. 1999); *Barbour v. City of White Plains*, 788 F. Supp. 2d 216, 223 (S.D.N.Y. 2011); *Insinga v. Cooperatieve Centrale Raiffeisen Boerenleenbank B.A.*, 478 F. Supp. 2d 508, 513 (S.D.N.Y. 2007).  That is even true in the Rule 68 context.  *Rosado v. City of New York*, No. 11 Civ. 4285(SAS), 2012 WL 955510 at *6 (S.D.N.Y. Mar. 15, 2012); *Tucker v. City of New York*, 704 F. Supp. 2d 347, 358 (S.D.N.Y. 2010).  The total fee amount currently listed $151,713.00 reflects the reasonable fees for litigating the case through trial, plus the fees and costs for researching, preparing, and writing this motion through 3:00 p.m. on March 17, 2017.  We will supplement the total fees and detail the time spent litigating this motion including any additional work done today and for any reply brief in the final reply.

from an incident which occurred on September 17, 2011, at approximately 10:00 a.m., on the Taconic State Parkway, during a traffic stop initiated by defendant Kirkland.  At the time of the stop, Ms. Payne had been driving northbound on the Taconic when defendant Kirkland pulled her vehicle over in the vicinity of the Mt. Kisco exit, in the Town of New Castle, New York.  Ms. Payne observed defendant Kirkland's vehicle on the right-hand side of the road engaged in a traffic stop of another vehicle.  Ms. Payne slowed down as she passed.  Defendant Kirkland thereafter pulled out and initiated a stop of Ms. Payne's vehicle apparently because Ms. Payne did not switch to the left lane when she passed his vehicle.  Upon running Ms. Payne's license, defendant Kirkland informed Ms. Payne that her license was suspended and that the registration of the vehicle she was driving was also suspended.  Ms. Payne was not aware of any issues with her license or with the registration of the vehicle, which belonged to her daughter, prior to the stop.  Kirkland further informed Ms. Payne that she could not continue to drive her vehicle; that he would call for a tow truck, and that Ms. Payne could call someone to pick her up.  Ms. Payne called her daughter and arranged for her to pick her up at the scene.

After waiting approximately twenty or more minutes, during which time plaintiff walked her dog and otherwise remained calmly on the scene of the stop, plaintiff was seated in the front passenger side seat of her vehicle when the tow truck arrived at the location.  Defendant Kirkland exited his vehicle and informed Ms. Payne that she would have to get out of her vehicle.  Situated on the side of a busy parkway with her small dog with her, Ms. Payne calmly and politely asked, in sum and substance, if she could remain in her vehicle until her daughter arrived, as she expected her daughter would be there soon.  Defendant Kirkland responded, in sum and substance, that Ms. Payne had to exit her vehicle.  Ms. Payne calmly and politely began to respond, in sum and substance, my daughter is on the way, can I please . . . .  Before

2

completing her sentence, defendant Kirkland, grabbed Ms. Payne's right arm without warning, pulled Ms. Payne out of her vehicle, physically spun Ms. Payne around, and intentionally, unnecessarily and otherwise unreasonably tripped her with his leg, causing her to fall to the ground on her right knee.  Defendant Kirkland handcuffed Ms. Payne and imprisoned her in his vehicle.  Notably, Ms. Payne's daughter arrived while defendant Kirkland and Ms. Payne were still at the scene.

As a result of defendant Kirkland's use of excessive force, Ms. Payne sustained physical injuries and emotional distress.  Ms. Payne first sought medical treatment on September 18, 2011 at Barnabas Health Community Medical Center, reporting that she had sustained an injury to her right knee after being pulled out of a car by a state trooper.  She presented with pain and tenderness of her right knee over the patella with some effusion.  Continuing to experience pain and discomfort, Ms. Payne thereafter followed-up with Ocean Orthopedic Associates, PA on October 3, 2011, where she presented with pain and medial joint line tenderness and was administered a Depo-Medrol injection into her right knee.  Ms. Payne was administered a MRI on October 10, 2011, which revealed that she had sustained areas of bone bruise with osteochondral fracture of the lateral femoral condyle, a torn medial collateral ligament at the superior attachment, and a torn posterior cruciate ligament around the superior attachment.  Ms. Payne was then prescribed a Bledsoe brace, which she was to wear for eight weeks, and was informed she may need surgery.  Ms. Payne was examined several weeks before trial by retained knee specialist Robert J. Meislin, MD, of the NYU Langone Medical Center, who concluded after an exam and a follow-up MRI that Ms. Payne's injuries arising from the incident were causally related to the incident, are permeant in nature, and may require surgery, including right knee arthroscopy, and possible osteochondral biologic resurfacing.

Ms. Payne retained the undersigned's former firm, Leventhal & Klein, LLP ("LK"), to represent her to pursue her excessive force claims against Defendant Kirkland.  When LK dissolved in July 2015, the undersigned's new firm, Brett H. Klein, Esq. PLLC ("Klein Civil Rights" or "KCR") assumed the prosecution of Ms. Payne's case.

Prior to drafting the initial complaint in this case, the undersigned and his former firm conducted an exhaustive investigation, which included gathering and reviewing Ms. Payne's medical records, and obtaining the court records from the summonses that arose out the incident.  After researching Ms. Payne's claims, LK drafted the initial Complaint, which was filed on September 3, 2014.  (Klein Decl. ¶ 8; ECF Doc. 1.)

### *Serving Kirkland*

From the outset of the litigation, plaintiff encountered difficulties in what were ostensibly non-complex tasks involving one defendant.  After a number of unsuccessful attempts to serve the defendant, LK was able to obtain the assistance of an Assistant Attorney General ("AAG") in the Attorney General's Litigation Division.  (Klein Decl. ¶ 9; ECF Doc. 3).  When this AAG required additional time to verify Kirkland's address, we had to ask the Court for an extension of time to complete service.  *Id.*  I was thereafter referred to an Assistant Counsel in the NYS Division of Police legal division to obtain defendant Kirkland's service address.  Once we obtained the address, our process servers were able to complete service.  (*Id.;* ECF Doc. 5.)

### *Motion to Dismiss and Amended Complaint*

Defendant sought and was granted an extension of time to respond to the complaint.  (Klein Decl. ¶ 10; ECF Docs. 6 and 8.)  In lieu of answering, defendant field a motion to dismiss.  (Klein Decl. ¶ 11; ECF Doc. 10.)  Plaintiff filed an amended complaint as of right on March 30, 2015.  (Klein Decl. ¶ 12; ECF Doc. 12), together with a letter setting forth plaintiff's position

that defendant's motion was moot.  (*Id.;* ECF Doc. 13.)

An initial conference was held on April 8, 2015, resulting in the issuance of a Scheduling Order.  (Klein Decl. ¶ 13; ECF Doc. 16.)  Defendant finally answered the amended complaint on April 17, 2015.  (Klein Decl. ¶ 14; ECF Doc. 17).

### ***Discovery***

Discovery was initially scheduled to close by October 30, 2015, with a final pretrial conference scheduled for September 16, 2015.  (Klein Decl. ¶ 15.)  Plaintiff had served her first set of interrogatories and document requests on April 8, 2015.  (Klein Decl. ¶ 16.)  Defendant served his discovery responses in mid-June 2015.  (Klein Decl. ¶ 17.)  Because defendant's responses were insufficient, plaintiff followed up with a deficiency letter to defense counsel in July.  (Klein Decl. ¶ 18.)  Given the discovery deadline, plaintiff deposed defendant Kirkland on August 25, 2015, despite not having all necessary documents.  (Klein Decl. ¶ 19.)  Defendant thereafter made supplemental disclosures starting in October 2015.  (Klein Decl. ¶ 20.)   Plaintiff prepared and served responses to defendant's demands in June-July 2015 without objection. (Klein Decl. ¶ 21.)

Plaintiff was deposed by the defendant on August 31, 2015.  (Klein Decl. ¶ 22.)  Ms. Payne's daughter was deposed by the defendant on November 23, 2015.  (Klein Decl. ¶ 23.)  As discussed more fully below, on the last day of discovery, November 30, 2015, defendants disclosed new witnesses and/or an address for a witness.  (Klein Decl. ¶ 24.)  One of the witnesses was deposed on the morning of one of the trial dates.  *Id.*

### ***Expert Discovery***

Given the apparent permanency of Ms. Payne's injuries, Ms. Payne was evaluated and referred for an updated MRI by Robert Meislin, M.D., a retained orthopedic expert that was

recommended to plaintiff's counsel by a friend who is in the medical profession and holds Dr.

Meislin in high regard.  (Klein Decl. ¶ 25.)  Dr. Meislin confirmed that Ms. Payne's continued

symptoms were causally related to the incident, and likely permanent.  In this regard, plaintiff

obtained and served Dr. Meislin's report and the updated MRI, and prepared and served

plaintiff's expert disclosure on October 30, 2015.  (Klein Decl. ¶ 27.)  While plaintiff appeared

for a defense examination, no expert report or disclosure was served by the defense.  (Klein

Decl. ¶ 28.)

### *Pre-trial Motion Practice and Filings*

On October 22, 2015, defendant again sought permission to file a motion, this time for

summary judgment.  (Klein Decl. ¶ 29; ECF Doc. 31.)  Of note, defendant relied on his version

of the facts in his letter, and not plaintiff's, notwithstanding the well settled standard for

summary judgment motions.  *Id.*  By letter dated October 29, 2015, plaintiff pointed this fatal

flaw out to the Court, and asked that the request to move be denied as futile.  (Klein Decl. ¶ 30;

ECF Doc. 35.)  At a pre-motion conference held on November 2, 2015, an expedited briefing

schedule was set, the Court directed that all outstanding discovery be completed by November

30, 2015, and it set deadlines for pre-trial filings and a trial date of December 14, 2015 was

fixed.  (Klein Decl. ¶ 31; ECF Doc. 36.)  The deadline for the motion filing came and went, with

defendant apparently conceding that the proposed motion would have been futile as they filed no

such motion.  (Klein Decl. ¶ 32.)

On November 30, 2015, the last day of discovery, after the close of business at 6:48 p.m.,

and only fourteen days before trial, defendant Kirkland served Supplemental Rule 26(a)

disclosures identifying four additional witnesses per Rule 26 for the first time: Zone Sergeant

Hamilton, Captain Brendan Casey, Lieutenant Douglas A. Larkin, and a Sergeant "to be

6

identified", and providing a new address for a non-party who could not previously be located, William Bender.  (Klein Decl. ¶33.)  Plaintiff immediately raised her concerns to defendant that the witnesses/information were disclosed too late for defendant to rely on said witnesses, and that she intended to raise this issue with the Court.  *Id.*  Having not reached an agreement regarding these late disclosed witnesses, on December 3, 2015, plaintiff served defendant with a Motion *in Limine* moving to preclude (among other evidence or testimony) all of the newly identified witnesses.  *Id.*

Plaintiff's counsel thereafter met and conferred with defense counsel, who agreed to not call new witnesses Casey, Larkin, and the Sergeant "to be identified," but refused to withdraw Bender and Hamilton as witnesses.  (Klein Decl. ¶ 34.)  Thus, by letter dated December 7, 2015, plaintiff sought expedited relief to preclude these witnesses, given the imminent trial date. (Klein Decl. ¶ 35; ECF Doc. 49.)  After receiving defendant's opposition (ECF Doc. 51), plaintiff submitted a reply.  (Klein Decl. ¶ 36; ECF Doc. 55.)  Plaintiff also filed her motion in limine.  (Klein Decl. ¶37; ECF Docs. 57-59.)

A telephonic hearing was held on December 10, 2015, at which time the Court allowed Bender to testify so long as he was produced to be deposed by plaintiff at defendants' expense prior to trial, together with other rulings on the parties' respective in limine motions.  (Klein Decl. ¶ 38.)  With only days to trial, plaintiff was available to depose Bender by the end of the week before trial.  (Klein Decl. ¶ 39.)  Because defense counsel was conducting a scene visit for this case, she was "unavailable", and requested that we depose Bender on the Sunday before trial. *Id.*  On December 12, 2015, plaintiff renewed her motion to preclude Bender under the circumstances.  (Klein Decl. ¶ 40; ECF Doc. 68.)

Judge Scheindlin allowed the witness to be produced prior to trial for a deposition in her

courtroom on December 15, 2015, before the trial started for that day, but at defendant's expense.  (Klein Decl. ¶ 41.)  Ms. Green-Stark, assisted by the undersigned, conducted the deposition.  (Klein Decl., ¶ 42.)

After causing plaintiff to spend substantial time dealing with the late disclosure, and then preparing for and conducting this deposition during valuable trial preparation time in the courtroom on an actual trial date, defendant chose *not* to call Bender at trial even though he was present in court and able to testify that day at trial.  (Klein Decl. ¶ 43.)

Prior to trial, plaintiff also prepared a joint pre-trial order, and drafted and submitted requests to charge and proposed *voir dire*.  (Klein Decl. ¶ 44; ECF Docs. 42-44.)  Plaintiff's counsel also drafted and filed objections to defendant's proposed jury instructions and verdict sheet.  (Klein Decl. ¶ 45; ECF Doc. 76.)  Finally, plaintiff's counsel spent many hours preparing Ms. Payne for trial, as well as her daughter and Dr. Meislin, and preparing for the cross examination of defendant Kirkland.  (Klein Decl. ¶ 46.)

### *The Trial*

Jury selection took place on December 14, 2015, followed by opening statements of counsel.  (Klein Decl. ¶ 47.)  After about two days of testimony from the plaintiff, her daughter, defendant Kirkland, and plaintiff's medical expert, Dr. Meislin, followed by closing arguments and a charging conference, the jury began its deliberations on December 16, 2015.  (Klein Decl. ¶ 48.)  Working after 5 p.m. into the early evening on December 17, 2015, the jury returned a verdict in Ms. Payne's favor in the amount of $7,500.  (Klein Decl. ¶ 49.)

It is plaintiff's understanding that defendant intends to pay the judgment, and that the only outstanding dispute remaining in this case is not plaintiff's entitlement to fees, as such is well settled, but rather the amount of fees and costs to be awarded to Ms. Payne.  (Klein Decl. ¶

50.)

### ***Settlement False Starts***

At the initial conference, Judge Scheindlin referred the case to Magistrate Judge Gorenstein for settlement purposes.  (Klein Decl. ¶ 51.)  Magistrate Judge Gorenstein issued a settlement conference order on June 23, 2015, with various pre-conference requirements, and scheduling a first settlement conference for July 31, 2015.  (Klein Decl. ¶ 52.)  My office prepared plaintiff's confidential ex-parte settlement letter.  (Klein Decl. ¶ 53.)  On July 24, 2015, defense counsel asked to cancel the conference given her lack of authority.  (Klein Decl. ¶ 54.)  Despite extensive discussions between the plaintiff's counsel and AAG Maria Hartofilis, a supervisor in the AG's Office in early December 2015, no authority was eventually obtained or offered at that time.  (Klein Decl. ¶ 55.)

At Judge Scheindlin's referral, another settlement conference before Magistrate Judge Gorenstein was set for December 1, 2015 via Magistrate Judge Gorenstein's order dated November 13, 2015.  (Klein Decl. ¶ 56; ECF Doc. 38.)  Plaintiff again drafted her confidential ex-parte settlement submission to the Court.  (Klein Decl. ¶ 57.)  On November 23, 2015, defense counsel requested an adjournment of the conference.  (Klein Decl. ¶ 58; ECF Doc. 39.)  The conference was adjourned to December 9, 2015.  (*Id;* ECF Doc. 40.)  On December 8, 2015, defendant informed Magistrate Judge Gorenstein that he wanted to cancel the conference as he had no authority to engage in meaningful discussions.  (Klein Decl. ¶ 59.)  The conference was canceled.  *Id.*

On May 3, 2016, for settlement purposes only, plaintiff served an interim streamlined report of her fees and costs to defendant, at defense counsel's request, in another effort to try to resolve this case.  (Klein Decl. ¶ 60.)  As reported to the Court in successive extension requests,

it took defense counsel until late December 2016 to obtain authority.  (Klein Decl. ¶ 61; ECF

Docs. 80, 84, 88, 90, and 94.)  Finally, Ms. Hartofilis acknowledged early last month that this

motion would have to be filed, as settlement of fees and costs was not likely.  (Klein Decl. ¶ 61.)

Plaintiff thus prepared and filed a consent judgment, which was entered on March 3,

2017.  (Klein Decl. ¶ 62; ECF Doc. 96.)

## ARGUMENT

## I.   PLAINTIFF IS THE PREVAILING PARTY AND IS ENTITLED TO A COMPLETE AWARD OF HIS ATTORNEYS' FEES AND COSTS

### A.   Legal Standard for Awarding Fees

Because the Court has entered judgment in plaintiff's favor, she is entitled to an award of

attorneys' fees and costs.  42 U.S.C. § 1988 specifically provides that "[i]n any action or

proceeding to enforce a provision of section[] . . . 1983 [of this title], . . . the court, in its

discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."

*See Roberson v. Giuliani*, 346 F.3d 75, 78 (2d Cir. 2003).

The purpose of the attorneys' fees provisions under the civil rights laws is to enable

plaintiffs with valid claims to attract effective legal representation and thereby encourage private

enforcement of civil rights statutes, to the benefit of the public as a whole.  *See Albemarle Paper*

*Co. v. Moody,* 422 U.S. 405, 415 (1975); *Hensley v. Eckerhart*, 461 U.S. 424, 445 (1983)

(Brennan, J., dissent).[2]  This oft-cited policy reason favoring fully compensable fee awards for

---

[2] The Supreme Court in *Hensley* quoted from the 1976 Senate report on the Civil Rights Attorney Fees Award Act, as follows:

prevailing plaintiffs is not just an abstract principle, but reflects a fundamental reality of legal

practice nationally, in New York and in this District.  If plaintiffs cannot obtain ample attorneys'

fees when they prevail in a civil rights case, there will be few or no "private attorney general"

actions brought because few attorneys will be willing or able to take on such cases.  Most

significantly, the attorneys' fees provided under 42 U.S.C. § 1988 are intended to attract

qualified counsel even in cases where the anticipated monetary recovery may otherwise be too

small to create a contingency significantly attractive for representation in complex or protracted

matters.  *See Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005).

In the Second Circuit, "[a]ttorneys' fees are awarded by determining a presumptively

reasonable fee."  *See Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric

Ctr.*, 652 F.3d 277, 289-90 (2d Cir. 2011).  Both the Second Circuit and United States Supreme

Court "have held that the lodestar – the product of a reasonable hourly rate and the reasonable

number of hours required by the case – constitutes the "presumptively reasonable fee."  *Millea v.

Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *see also Perdue v. Kenny A. ex rel. Winn*,

130 S. Ct. 1662, 1672-73 (2010) ("[T]he lodestar method yields a fee that is presumptively

sufficient" to "induce a capable attorney to undertake the representation of a meritorious civil

---

All of these civil rights laws depend heavily upon private enforcement, and fee
awards have proved an essential remedy if private citizens are to have a
meaningful opportunity to vindicate the important Congressional policies which
these laws contain. In many cases arising under our civil rights laws, the citizen
who must sue to enforce the law has little or no money with which to hire a
lawyer.  If private citizens are to be able to assert their civil rights, and if those
who violate the Nation's fundamental laws are not to proceed with impunity, then
citizens must recover what it costs them to vindicate these rights in court. (citing
Senate Report 2, House Report 1-3, U.S. Code Cong. & Admin. News 1976, p.
5910.)

461 U.S. at 445.

rights case").  Thus, a court awarding fees must first calculate the lodestar.  *See Millea*, 658 F.3d at 167.

Once the court has determined the lodestar, it may depart from that amount only "*in exceptional circumstances*."  *Id.* at 169 (emphasis added).  Ultimately, "'the most critical factor' in the district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained by the plaintiff.'"  *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

In addition to attorney hours expended litigating a case on the merits, the time spent preparing the fee application itself is also compensable.  *See Rosado*, 2012 WL 955510 at *6 ("[A]s a matter of equity, plaintiff should be awarded some amount for the time his counsel spent in preparing the instant fee application."); *Tucker*, 704 F. Supp. 2d at 358.  Compensating counsel for the time spent preparing a fee application is essential to avoiding the "'dilut[ion of] the value of a fees award by forcing attorneys into extensive, uncompensated litigation in order to gain any fees.'"  *Himmel v. Country in New York, LLC*, No. 09 Civ. 5073(LMM)(DF), 2011 WL 31045, at *3 (S.D.N.Y. Jan. 4, 2011) (quoting *Gagne v. Maker,* 594 F.2d 336, 344 (2d Cir.1979)).

Notwithstanding these requirements, the Supreme Court has "emphasize[d] that the determination of fees should not result in a second major litigation."  *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).  Judges "need not, and indeed should not, become green-eyeshade accountants."  *Id.*  "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection."  *Id.*

### B.  Plaintiff's Counsel's Rates Correspond to the Prevailing Market Rate and Constitute KCR's Customary Billing Rates

To determine the reasonable hourly rate for each attorney, "courts should rely on both evidence submitted by the parties as to the rates they typically charge," *Mugavero v. Arms Acres, Inc.*, No. 03 Civ. 05724(PGG), 2010 WL 451045, at *4 (S.D.N.Y. Feb. 9, 2010), and "the prevailing market rates for counsel of similar experience . . . in the relevant community," *Farbotko v. Clinton County of New York*, 433 F.3d 204, 209 (2d Cir. 2005).  In considering the latter factor, a tribunal may rely "on both 'its own knowledge of comparable rates charged by lawyers in the district,' as well as on 'evidence submitted by the parties.'"  *Robinson v. City of New York*, No. 05 Civ. 9545 (GEL), 2009 WL 3109846, at *4 (S.D.N.Y. Sept. 29, 2009) (citations omitted).  "The rates used by the court should be current rather than historic hourly rates."  *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316(PAC), 2012 WL 3878144, at *2 (S.D.N.Y. Aug. 6, 2012) (quoting *Reiter v. MTA New York City Transit Auth.*, 457 F.3d 224, 243 (2d Cir. 2006)); *see also Mugavero*, 2010 WL 451045, at *5-6 (awarding fees at current rates over defendant's objection, to account for fact that "law firm was not paid for [its] time in this case throughout these years").

Where possible, the best measure of a reasonable hourly rate is the rate actually charged and received by the attorneys seeking fees.  Here, the hourly rates sought for the attorneys involved are the same as the rates charged to KCR's other civil rights clients:

| Lawyer | Title/Law School Year | Hours | Rate |
|---|---|---|---|
| Brett Harris Klein | Partner, 1997 | 177.56 | $575.00 |
| Lissa Green-Stark | Associate, 2008 | 141.76 | $350.00 |

**Total Attorney Hours:       319.32     Total Fees:       $151,713.00**

13

These hourly rates are counsel's "prevailing market rates" and, accordingly, are the best evidence of a reasonable hourly rate. *See Crescent Publ'g Grp., Inc. v. Playboy Enters.*, 246 F.3d 142, 151 (2d Cir. 2001) ("The actual billing arrangement certainly provides a strong indication of what private parties believe is the 'reasonable' fee to be awarded."); *Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 114 (2d Cir. 1988) (affirming award of fees "based on counsel's usual billing rates"); *Meriwhether v. Coughlin*, 727 F. Supp. 823, 831 (S.D.N.Y. 1989) ("[T]he usual hourly billing rates charged to paying clients . . . are reasonable rates of compensation for their work in this action."); *Reid v. New York*, 584 F. Supp. 461, 462 (S.D.N.Y. 1984) (awarding fees based on counsel's customary hourly rates because it is indisputable that "the hourly rates set forth by plaintiffs' counsel are their 'market rates'"); *Andrews v. Koch,* 554 F. Supp. 1099, 1101 (E.D.N.Y. 1983) (awarding fees based on "hourly rates normally charged" by partners and associates at New York City law firm).

The presumptive market rate should also be used here because counsel's prevailing rates easily fall within the range of reasonable fees for New York City lawyers of comparable experience, reputation, and skill.  In addition to the Klein Declaration setting forth the firm's billing rates and detailed biographical information for each attorney, plaintiff submits a sworn statement from a partner at another New York City law firm with extensive experience in civil rights cases, as well as familiarity with Mr. Klein's abilities and experience.  *See* Decl. of Eric Hecker, dated March 17, 2017 ("Hecker Decl.").   Mr. Hecker affirms that lawyers practicing civil rights law (and, as Mr. Hecker's does, commercial law) in New York City charge hourly rates comparable to those being requested here.  (Hecker Decl. ¶ 7.)

Courts routinely rely on such sworn statements as "direct evidence of prevailing market rates" when setting rates in fee-shifting cases. *Vilkhu v. City of New York*, No. 06 Civ. 2095

14

(CPS), 2009 WL 1851019, at *5 (E.D.N.Y. June 26, 2009), *vacated on other grounds by* 372 F.

App'x 222 (2d Cir. 2010) (considering declarations when determining market rates in a civil

rights case); *see also Creighton v. Dominican Coll.*, No. C09-3983Z, 2011 WL 4914724, at *6

(S.D.N.Y. Aug. 16, 2011) (relying on declarations from "three experienced practitioners in

employment law" in assessing reasonableness of proposed rates); *Barbour*, 788 F. Supp. 2d at

225-26 (relying on practitioner affidavits in civil rights case).

Moreover, the rates comport with numerous recent decisions awarding fees to civil rights

attorneys in Manhattan.  In those cases, judges have observed that "rates awarded to experienced

civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for

associates have ranged from $200 to $350, with average awards increasing over time."  *See*

*Abdell v. City of N.Y.*, 05 CV 8453 (RJS), 2015 WL 898974, at *3 (S.D.N.Y. Oct. 23, 2013)

(quotation marks and citations omitted) (awarding fee of $625 per hour for experienced civil

rights attorney); *see also Coakley v. Webb*, No. 14 CIV. 8438 (ER), 2016 WL 1047079, at *6

(S.D.N.Y. Mar. 10, 2016) (awarding a discounted fee rate of $575 in consideration of the short

duration and uncomplex nature of the case); *Torres v. Gristede's Operating Corp.*, 2012 WL

3878144, at *3; *Scott v. City of New York*, 643 F.3d 56, 59–60 (2d Cir. 2011) (approving

Southern District judge's determination that $550 per hour in a FLSA case was reasonable);

*DeCurtis v. Upward Bound Int'l, Inc.*, No. 09 Civ. 5378(RJS), 2011 WL 4549412, at *8

(S.D.N.Y. Sept. 27, 2011) (awarding fees at rate of $550 for partner); *In re Palermo*, No. 08 CV

7421(RPP), 2011 WL 3874866, at *20 (S.D.N.Y. Sept. 2, 2011) (awarding partner rate of $525

per hour); *Creighton*, 2011 WL 4914724, at *6 (awarding fees at rate of $550 for partner and

$395 for senior associate); *Adorno v. Port Auth. of New York & New Jersey*, 685 F. Supp. 2d

507, 513-14 (S.D.N.Y. 2010) (awarding fees at rate of $500 and $550 for partners); *Robinson*,

15

2009 WL 3109846, at *4-5 (awarding fees at rates of $500 and $450 for primary lawyers in employment discrimination case); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008) (awarding fees at rate of $600 for partners, $350 for senior associates, and $250 for junior associates).  In *Vilkhu v. City of New York*, Judge Sifton awarded Mr. Hecker's partner, Mariann Wang, and her then-partners – *roughly eight years ago, for work conducted over a decade ago* – fees ranging up to $525 per hour for partners in a police misconduct action.  2009 WL 1851019, at *4.  In recent civil rights cases, district courts have gone beyond this range, and awarded fees at the rate of $625 per hour for a senior attorney, and at the rate of $450 per hour for co-counsel. *See Barbour*, 788 F. Supp. 2d at 225-26; *see also Abdel*, 2015 WL 898974, at *3.

Even many years prior to these decisions, judges awarded fees for civil rights attorneys in New York City at rates approaching what counsel seek in this case.  *See, e.g.*, *Raniola v. Bratton*, No. 96 Civ. 4482(MHD), 2003 WL 1907865, at *6 (S.D.N.Y. Apr. 21, 2003) (looking ten years ago to "rates prevailing in the Southern District for experienced civil rights practitioners who maintain a single or small-firm practice" in approving fee request of $400 per hour for attorney in small firm, and taking note of the risk that civil rights litigators who take cases on contingency bear); *Green v. Torres*, No. 98 Civ. 8700(JSR), 2002 WL 922174, at *1 (S.D.N.Y. May 7, 2002), *vacated on other grounds by Green v. Torres*, 59 Fed. App'x 400 (2d Cir. 2003) (rate of $400); *Skold v. Am. Int'l Grp., Inc.*, No. 96 Civ. 7137(HB), 1999 WL 405539, at *7 (S.D.N.Y. June 18, 1999) (rate of $400).

That these rates were paid *more than fifteen years ago* is significant, because the Second Circuit has specifically instructed courts to account for the increase in rates over time, and not to be limited by mimicking prior decisions in awarding fees: "Recycling rates awarded in prior cases without considering whether they continue to prevail may create disparity between

16

compensation available under [fee-shifting statutes] and compensation available in the marketplace.  This undermines [the] central purpose of attracting competent counsel to public interest litigation."  *Farbotko*, 433 F.3d at 208-11.  Given this plethora of case law supporting such rates and considering the passage of time and increased cost of living since these decisions were rendered, the rates sought by counsel in this case are reasonable.

Additionally, the skill-level, experience, and reputation of the specific attorneys involved in this case lends further support to the reasonableness of their proposed rates.  Mr. Klein graduated from Binghamton University in 1994 and then Brooklyn Law School in 1997.  He worked as an Assistant Corporation Counsel in the New York City Law Department, quickly rising to the level of Senior Counsel, where Mr. Klein continued to litigate high profile and complex cases, while supervising as many as ten junior attorneys at a time.  Since graduating law school, he has actively litigated *several hundred* civil rights cases, including his time at the City's Law Department, and as a founding partner at Leventhal & Klein, LLP ("LK"), and currently as a founder and owner of Brett H. Klein, Esq., PLLC ("Klein Civil Rights" or "KCR").  (Klein Decl. ¶¶ 76-86.)  Throughout his years as a litigator, Mr. Klein has served as lead counsel in a vast array of civil rights actions, including numerous cases involving abuse by authorities such as the police and corrections officers at the City, State and federal levels.  *Id.* Mr. Klein has also trained junior attorneys on topics concerning Section 1983 litigation, has provided CLE to the Southern District Mediation Panel as a representative of the plaintiff's bar, and is a member of the Eastern District of New York's Committee on Civil Litigation.  *Id.*

Lissa Green-Stark graduated from Oberlin College in 2002 and received her J.D. degree from Boston University School of Law in 2008, where she was an articles editor of the Boston University Public Interest Law Journal, an editor of the for the Boston University Legislative

Drafting Clinic, and a secretary and then board member of the Public Interest Project.  (Klein Decl. ¶ 87.)  After graduating from law school, Ms. Green-Stark worked for over two years at Batiste Aronowsky & Suchow, Staten Island Legal Defense Services ("BAS"), a firm that was charged with representing indigent criminal defendants in Staten Island.  (Klein Decl. ¶ 88.)  During her time at BAS, Ms. Green-Stark represented clients accused of both felonies and misdemeanors in all aspects of their criminal cases, handling a case load of up to 100 or more clients at a time.  *Id.*  Ms. Green-Stark first chaired three misdemeanor bench trials, second chaired two felony trials, appeared at numerous hearings, filed numerous successful motions on behalf of her clients, and made all necessary court appearances for her clients during her time at BAS.  *Id.*  In 2011, Ms. Green-Stark joined LK as an associate.  (Klein Decl. ¶ 89.)  Ms. Green-Stark was involved in the prosecution of hundreds of civil rights cases at LK from inception through trial through the firm's dissolution in July 2015.  *Id.*  During the majority of her time at LK, Ms. Green-Stark was the sole associate and was at all times the primary litigation associate.  Ms. Green-Stark conducted dozens of depositions each year, assisted in preparing nearly all litigation papers and motions, and second chaired a federal trial.  *Id.*  Since joining KCR in July 2015, Ms. Green-Stark has continued to work on an intensive and challenging caseload of constitutional and civil rights cases.  (Klein Decl. ¶ 90.)  Her work at KCR has ranged from client intake, to depositions, to drafting motion responses and Second Circuit briefs.  *Id.*  She has also second chaired two federal trials, including this one, and prepared other federal cases to the eve of trial.  *Id.*  Ms. Green-Stark has extensive knowledge, skill, and expertise in the areas of civil rights law and New York criminal law.  *Id.*

Indeed, the rates requested by counsel are significantly lower than the rates charged by senior partners in many New York City law firms.  According to the National Law Journal's

survey of billing rates from *5 years ago*, partners in many City firms frequently charge upwards of $750 and even $950 an hour.  *See Nationwide Sample of Law Firm Billing Rates*, The National Law Journal (Dec. 17, 2012), *available at* http://www.law.com/jsp/nlj/PubArticleNLJ.jsp?germane=1202581351631&id=1202581266427 &interactive=true.  In the National Law Journal's survey, the average median billing rate for partners at the New York firms in the nationwide sampling was greater than $600.  *Id.*  Likewise, associates in many City firms charge in excess of $450 dollars per hour, with some associates billing in excess of $600 dollars per hour.  *Id.*  Measured against these significantly higher rates, which defendants routinely pay, Counsel's rates are eminently reasonable.  (*See* Hecker Decl. ¶ 7.)

## II.     THE HOURS EXPENDED LITIGATING MS. PAYNES'S CASE ARE REASONABLE

In determining whether an attorney's expenditure of time is compensable, "the relevant issue "is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."  *Short v. Manhattan Apartments, Inc.*, 286 F.R.D. 248, 256 (S.D.N.Y. 2012) (quoting *Grant v. Martinez,* 973 F.2d 96, 99 (2d Cir. 1992)).  In litigating Ms. Payne's case, plaintiff's counsel expended a combined total of more than 319 hours.  (*See* Klein Decl. ¶ 67; Ex. 1.)  The hours expended by counsel were necessary and entirely reasonable, and counsel are entitled to full payment for their efforts.

In accordance with KCR's practices of utilizing the least expensive level of personnel where appropriate and consistent with the highest professional standards, KCR used its associate attorney whenever possible.  (Klein Decl. ¶ 66.)  Plaintiff's counsel seeks compensation only for time reasonably expended on this case, and, in the exercise of billing judgment, has deleted all

arguably excessive or duplicative hours, such as by entirely excising from the bill certain smaller amounts of hours spent by Mr. Klein's former partner, Jason Leventhal, which amounted to a $3,225 reduction in fees sought.  (Klein Decl. ¶ 69.)

To the extent that Mr. Klein and Ms. Green-Stark did occasionally charge for the same activities, it was for essential tasks such as the trial.  Courts have recognized that having more than one attorney present at such moments is entirely appropriate and fully compensable.  *See Rozell*, 576 F. Supp. 2d at 541 (no reduction in hours indicated where two attorneys present at "the most critical points in the litigation, such as the depositions of key witnesses").  Indeed, defendants had two lawyers and a paralegal at their trial table during this trial.

Moreover, the time spent by counsel preparing for and taking depositions, and conducting a four-day federal trial, was particularly well spent.  The value of this work is evidenced by the jury's verdict, notwithstanding the defendants' unwillingness to offer any amount of money to plaintiff in advance of trial despite a number of efforts by plaintiff to facilitate a potential pre-trial settlement.  (Klein Decl. ¶¶ 51-59.)

It was also necessary for counsel to engage in internal discussions about the case in order to develop effective litigation strategies and to assign tasks as efficiently and inexpensively as possible.  As one judge in the Southern District observed, "[a]ny joint endeavor requires communication among those involved to ensure that everyone is working toward the same objective, that two people do not independently do the same thing twice, and that the insights and knowledge of all concerned are combined in the interest of achieving the common goal." *Harrington Haley LLP v. Nutmeg Ins. Co.*, 39 F. Supp. 2d 403, 411 (S.D.N.Y. 1999). Accordingly, conferences, phone calls, and emails between members of plaintiff's legal team were an essential component of developing and effectively litigating her case, and are fully

compensable.  *See Wise v. Kelly*, 620 F. Supp. 2d 435, 453 (S.D.N.Y. 2008) (declining to reduce

a fee request for time spent in internal conferences); *Harrington*, 39 F. Supp. 2d at 411-12

(holding that time spent in attorney conferences was reasonable and necessary to ensure that

"the right hand [knows] what the left hand is doing").

　　　In considering the hours expended by plaintiff's counsel, the Court should also consider

the tactics and approach used by opposing counsel.  As detailed above and in the accompanying

Klein Declaration, the AG attempted on two occasions to move to dismiss, engaged plaintiff in a

number of settlement false starts, and disclosed witnesses on the eve of trial, one of which had

to be deposed on the morning of trial, only to be withdrawn as a witness by the defense.  (Klein

Decl. ¶ 13.)  As a result of the AG's approach, plaintiff's counsel was forced to substantially

litigate what were ostensibly non-complex tasks.

　　　The Court is well positioned to evaluate the hours counsel worked because of the care

counsel took in timekeeping.  As explained in counsel's declaration, all attorneys and paralegals

at KCR maintain contemporaneous time records reflecting their time spent on each case.  (Klein

Decl. ¶ 2.)  Those time records include detailed explanations identifying each discrete task

performed each day in six-minute (tenth-of-an-hour) increments.  *See, e.g.*, *Mugavero*, 2010 WL

451045, at *6 (court "must consider . . . the 'contemporaneous time records . . . [that] specify, for

each attorney, the date, hours expended, and nature of the work done'" (quoting *New York State*

*Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)).  Moreover, to the

extent that the AG may attempt to challenge any entries as vague, a "[d]efendant['s] complaint

about lack of specificity in the work summaries does not, in itself, justify their demand for a

substantial reduction in compensable time."  *Raniola v. Bratton,* No. 96 Civ. 4482 (MDD), 2003

WL 1907865, at *4 (S.D.N.Y. Apr. 21, 2003).  That is because "[c]ounsel is not required to

'record in great detail how each minute of his time was expended,'" so long as time entries "'identify the general subject matter of [counsel's] time expenditures.'"  *Hnot v. Willis Group Holdings Ltd.*, No. 01 Civ. 6558 (GEL), 2008 WL 1166309, at *5 (S.D.N.Y. Apr. 7, 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983)).  A time entry is sufficiently precise if it enables "the Court to assess the reasonableness of the amount charged in relation to the work performed."  *Id.* (declining to reduce fees despite challenge to lack of specificity) (quotation marks omitted).

Additionally, to determine whether hours were reasonably spent, a court "is not required to assess each entry in isolation; rather, it may use its knowledge of the case and the demands that the issues posed by the case placed on the attorneys to judge whether counsel were wasting significant amounts of time or otherwise performing with less than reasonable efficiency." *Raniola*, 2003 WL 1907865, at *4 (citing *Algie v. RCA Global Commc'ns, Inc.*, 891 F. Supp. 875, 894 (S.D.N.Y.1994)); *see also Short*, 286 F.R.D. at 256 ("[C]ourts should look at the amount of time spent on each task, and then decide how much of that time was reasonably expended given "the scope and complexity of the particular litigation.") (quoting *Carey*, 711 F.2d at 1146); *Mugavero*, 2010 WL 451045, at *7.  In this case, counsel has recorded their hours with more than sufficient specificity for the Court to effectively evaluate all tasks, particularly when the time entries are viewed in context.

## III.   APPLYING THE JOHNSON FACTORS, THE FEES REQUESTED ARE REASONABLE

As explained above, the lodestar, *i.e.*, the combination of counsel's billing rate and the number of hours worked, dictates the fee award in all but the most extraordinary cases.  *See Millea*, 658 F.3d at 166; *see also Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1672-73 (2010).  Thus, for all of the reasons set forth above, counsel's proposed rates and the number of

hours expended in the litigation were all reasonable, making further analysis unnecessary because there are no extraordinary circumstances in this case that warrant increasing or decreasing fees above or below the lodestar amount.

Nonetheless, an assessment of the factors in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), reveals that the balance of other "case-specific variables" courts consider in awarding fees weighs strongly in favor of plaintiff, confirming that the fees sought here are reasonable. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany County Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008) (explaining that, in determining the reasonable fee in a case, courts may consider "all of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate," including "among others, the *Johnson* factors"):

(1)     The Novelty and Labor Required.  As noted throughout this brief, plaintiff's counsel was required to expend considerable time and effort not only in litigating and trying plaintiff's case, but also for tasks that would not have been required but for defendants' litigation tactics.

(2)     The Novelty and Difficulty of the Questions.  The main issues in this case were the reasonableness of the force used, and the breadth of injuries sustained by Ms. Payne on September 17, 2011, which necessitated an initial records collection and analysis process consistent with the average excessive force case.  Additional time, skill and expertise was required to locate and retain plaintiff's expert, Robert J. Meislin, M.D.  That said, issues in this case -- proper procedure for use of force by State troopers, and the scope of Ms. Payne's orthopedic injuries -- were not entirely straightforward.  This factor thus appears neutral.

(3)     The Level of Skill Required to Perform the Legal Services Properly.  Litigating this case required a great deal of care and familiarity with the standards for establishing an excessive force claim, establishing a permanent injury, and otherwise successfully trying a federal case against a skilled and highly resourced adversary.

(4)     The Preclusion of Employment by the Attorney Due to Acceptance of the Case.  Because of the significant amount of time expended in this case, including weeks of preparation for and conducting a four-day trial, the attorneys working on it were not able to work on other litigation.

(5)     The Attorney's Customary Hourly Rate.  As set forth in the Klein Declaration, the rates used in this application are the same as rates routinely charged by KCR of its other civil rights clients.

(6)     Whether the Fee is Fixed or Contingent.  While the contingent nature of the case no longer serves as the basis for a multiplier, *see City of Burlington v. Dague*, 505 U.S. 557 (1992), it surely serves as a basis for selecting hourly rates at the higher end of the scale.  As in most civil rights actions, counsel in this case relied on the fee-shifting provisions to provide them with compensation for their services, and have not been paid throughout the case.  Thus, the sixth *Johnson* factor likewise favors plaintiff obtaining her full fee.

(7)     Time Limitations Imposed by the Clients or the Circumstances.  The time limitations imposed by the circumstances of the case were substantial.

(8)     The Amount Involved in the Case and the Results Obtained.  Plaintiff obtained a judgment in her favor in the amount of $7,500.00, and is entitled by statute to reasonable attorneys' fees, costs, and expenses to date.  That result constituted a significant victory for plaintiff, by both vindicating her rights and providing a measure of financial compensation.

(9)     <u>The Experience, Reputation, and Ability of the Attorneys</u>.  The Klein Declaration and the

supporting declaration of Mr. Hecker describe the extensive experience the lawyers involved in

this matter have litigating civil rights cases.

(10)    <u>The "Undesirability" of the Case</u>.  Suing a New York State Trooper is a challenging

undertaking for any small or medium-sized firm with limited resources.

(11)    <u>The Nature and Length of the Professional Relationship with the Client</u>.  A close

relationship developed between plaintiff's counsel and plaintiff in the time during which this

case was litigated.

(12)    <u>Awards in Similar Cases</u>.  As set forth at length above, courts in New York have awarded

fees in accordance with the rates requested here.

Accordingly, the twelve *Johnson* factors weigh in favor of awarding plaintiff's full fee

here.

## IV.    PLAINTIFF IS ENTITLED TO REIMBURSEMENT OF HIS COSTS

Plaintiff's litigation costs were carefully tracked and recorded as they were accrued.

(Klein Decl. ¶ 46.)  They are summarized here and detailed in the disbursement records annexed

as Exhibit 2 to the Klein Declaration.

| Category | Amount | Category | Amount |
|---|---|---|---|
| Supplies | $33.74 | Parking/car fare | $67.53 |
| Process Server | $248.00 | Court Fees | $400.00 |
| Court Reporters | $1,315.80 | Fedex | $10.00 |
| Medical Records | $62.72 | Expert Review of Records and Testimony | $8,350 |

**Total:**            **$10,487.79**

The costs counsel incurred in this case – which include primarily court reporters, court

fees, legal research, and retrieval and review of medical records – are reasonable and of the type

normally charged to clients of KCR.  (*See* Klein Decl. ¶ 42.)  *See also Rozell*, 576 F. Supp. 2d

527 (awarding costs of approximately $32,000); *Morris v. Eversley*, 343 F. Supp. 2d 234, 245

(S.D.N.Y. 2004) (awarding "any additional costs ordinarily charged in the particular legal

marketplace") (citing *Anderson v. City of New York*, 132 F. Supp. 2d 239, 245 (S.D.N.Y. 2001)).

## CONCLUSION

For the reasons set forth above and based on the evidence presented, we respectfully

request that the Court award Ms. Payne all requested attorneys' fees and costs.

Dated:        New York, New York
              March 17, 2017

                                        BRETT H. KLEIN, ESQ., PLLC

                                        By: ___ s/ Brett H. Klein _____
                                              Brett H. Klein

                                        305 Broadway, Suite 600
                                        New York, New York 10007
                                        (212) 335-0132

                                        *Attorneys for Plaintiff Roseanne Payne*